**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY,
a foreign corporation,

    Plaintiff,

vs.                                                                 Civ. No. 11-443 JP/GBW
                                                                    Consolidated with
                                                                    Civ. No. 11-612 JP/GBW

OMAR ARBELAEZ, Individually
and as Personal Representative of
the Estate of NORA ARBELAEZ,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant Omar Arbelaez filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.[1] In the underlying Complaint,[2] automobile insurer

---

[1] On June 24, 2011, Defendant Omar Arbelaez filed DEFENDANT OMAR ARBELAEZ', Individually; and as Personal Representative of the Estate of NORA ARBELAEZ' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. RULE 12(c) (Doc. No. 6) (Motion for Judgment on the Pleadings). On July 8, 2011, Plaintiff American National Property and Casualty Company (ANPAC) filed PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT OMAR ARBELAEZ' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. RULE 12(C) (Doc. No. 8) (Response). On July 21, 2011, Mr. Arbelaez filed DEFENDANT OMAR ARBELAEZ', Individually; and as Personal Representative of the Estate of NORA ARBELAEZ' REPLY TO RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. RULE 12(c) (Doc. No. 11) (Reply).

[2] American National Property and Casualty Company (ANPAC) filed its COMPLAINT FOR DECLARATORY JUDGMENT (Doc. No. 1) (Complaint) on May 23, 2011. Mr. Arbelaez filed DEFENDANT OMAR ARBELAEZ', Individually, and as Personal Representative of the Estate of NORA ARBELAEZ' ANSWER TO PLAINTIFF AMERICAN NATIONAL PROPERTY AND CAUSALTY COMPANY, a foreign corporation's COMPLAINT FOR DECLARATORY JUDGMENT (Doc. No. 4) (Answer) on June 16, 2011.

1

American National Property and Casualty Company (ANPAC) seeks a declaratory judgment regarding the effect of a November 2008 settlement agreement in a state court case between ANPAC and Mr. Arbelaez, who was insured by ANPAC, regarding claims arising from an automobile accident that occurred in November 2006. In ANPAC's view, the settlement agreement and state court judgment preclude Mr. Arbelaez from seeking any additional uninsured/underinsured motorist (UM/UIM) insurance benefits arising out of the accident. In his Motion for Judgment on the Pleadings, Mr. Arbelaez argues that two recent New Mexico Supreme Court decisions dictate that the Court deny ANPAC's request for declaratory judgment, dismiss the Complaint, and reform the 2008 settlement agreement to provide additional UM/UIM coverage. On September 6, 2011, the Court held a hearing on the Motion for Judgment on the Pleadings. Attorney Paul Houston was present for ANPAC, and attorneys George Bleus and Josh Eden were present for Mr. Arbelaez.

On October 20, 2011, the Court sent counsel a letter identifying New Mexico Supreme Court cases that may be relevant to the issues, but which had not been cited in the briefing on the Motion for Judgment on the Pleadings and had not been discussed at the September 6, 2011, hearing. The Court scheduled a supplemental hearing on October 27, 2011, to afford counsel an opportunity to present arguments regarding the cases cited in the October 20, 2011, letter. At the October 27, 2011, hearing, Attorney Paul Houston was present for ANPAC, and attorneys George Bleus and Josh Eden were present for Mr. Arbelaez. After reviewing the parties' briefing, the relevant law, argument by counsel, and the underlying pleadings including attached exhibits, the Court concludes that Mr. Arbelaez's Motion for Judgment on the Pleadings should be denied.

**BACKGROUND**

This case stems from a single-car accident that occurred on November 20, 2006. The car involved in the accident was a 2002 Chrysler Sebring owned by Mr. Arbelaez, who was not in the car at the time. Driver Jeremy Singleton and four passengers, Nora Arbelaez, Vennessa Arbelaez, Jennessa Singleton, and Jeremiah Singleton, were traveling southbound on Interstate 25 in Douglas County, Colorado, when the car struck a dead deer that was lying in the roadway, causing the car to roll over. As a result of the accident, Jeremy Singleton and Jennessa Singleton died, and the other three people in the car were injured. Nora Arbelaez sustained severe injuries and died on June 8, 2008.

At the time of the accident, Mr. Arbelaez had liability and UM/UIM insurance coverage from ANPAC under Policy No. 30-A-198-04A-6 as well as additional UM/UIM coverage under a separate ANPAC policy. After the accident, Mr. Arbelaez, individually and as personal representative of the estate of Nora Arbelaez, along with Vennessa Arbelaez, individually, and as natural parent and next friend of Jeremiah Singleton, and as personal representative of the estate of Jennessa Singleton, made demand upon ANPAC, both as the liability insurer for Jeremy Singleton and as the UM/UIM carrier for Mr. Arbelaez.

The exhibits attached to ANPAC's Complaint demonstrate that, following the accident, Mr. Arbelaez and Vennessa Arbelaez initiated a wrongful death and personal injury lawsuit against ANPAC, No. D-1329-CV-2008-02128, in the Thirteenth Judicial District Court, County of Sandoval, State of New Mexico. *See* Complaint at Exhibit C. The Arbelaezes and ANPAC, through legal counsel, subsequently negotiated a settlement of the Arbelaezes' claims. *See* Complaint at Exhibits A, B. To settle the claims, Mr. Arbelaez and Vennessa Arbelaez each

executed a RELEASE IN FULL AND INDEMNITY AGREEMENT (Release in Full)[3] in which they agreed to release ANPAC from all claims, "known or unknown," arising out of the accident in exchange for ANPAC's payment of specified amounts of insurance benefits. *See* Complaint at Exhibits A, B. The Release in Full signed by Vennessa Arbelaez included a settlement on behalf of minor Jeremiah Singleton, which required the approval of the Thirteenth Judicial District Court. *See* Complaint at Exhibit A.

On November 25, 2008, the Thirteenth Judicial District Court entered an ORDER OF DISMISSAL in Case No. 1329-CV-2008-021128. The ORDER OF DISMISSAL provides,

> THIS MATTER having come before the Court on Plaintiff's Motion to Dismiss With Prejudice, on the grounds that all matters in controversy between Plaintiffs and Defendants have been fully settled and compromised; the Court, having reviewed said Motion and being otherwise fully advised in the premises,
> FINDS that the Court has jurisdiction over the parties and subject matter herein, and that said Motion is well-taken and should be granted.
> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Plaintiff's Complaint for Damages for Wrongful Death and Personal Injuries, and all causes of action or counts that are or that could have been filed therein, be and the same hereby are dismissed with prejudice.

Complaint at Exhibit C. The Thirteenth Judicial District Court also entered an order approving the settlement on behalf of minor Jeremiah Singleton. Complaint at Exhibit D.

On April 19, 2011, despite the settlement agreement and dismissal with prejudice of the Arbelaezes' lawsuit, attorney George Bleus sent a letter to ANPAC, claiming that the Arbelaezes are entitled to recover additional UM/UIM insurance benefits under two recently filed New Mexico Supreme Court decisions, *Progressive Northwestern Insurance Co. v. Weed Warrior Services*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209, and *Jordan v. Allstate Insurance Co.*,

---

[3] Vennessa Arbelaez is not named as a defendant in ANPAC's Complaint for declaratory judgment.

2010-NMSC-051, 149 N.M. 162, 245 P.3d 1214, and expressing the Arbelaezes' intent to make a claim for additional UM/UIM benefits. Complaint at Exhibit E.

In *Weed Warrior*, the New Mexico Supreme Court considered "the duty imposed on insurers to offer [UM/UIM] coverage" under New Mexico's UM/UIM statute, NMSA 1978, § 66-5-301 (1983). *Weed Warrior*, 2010-NMSC-050, ¶ 1. The New Mexico Supreme Court in *Weed Warrior* held that § 66-5-301 requires an automobile insurer to "offer UM/UIM coverage in an amount equal to the liability limits of the policy" and concluded "that the choice of the insured to purchase any lower amount [of UM/UIM coverage] functions as a rejection of that maximum amount of coverage statutorily possible." *Id.* ¶ 15.

In *Jordan*, decided the same day as *Weed Warrior*, the New Mexico Supreme Court clarified the elements of a valid rejection of UM/UIM coverage as follows:

> If an insurer does not (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject, the policy will be reformed to provide UM/UIM coverage equal to the liability limits.

*Jordan*, 2010-NMSC-051, ¶ 22. In *Jordan*, the New Mexico Supreme Court reviewed three consolidated cases on appeal from the New Mexico Court of Appeals. *Id.* ¶ 1. In each case, the automobile insurer had issued an insurance policy to the insured that provided a lower amount of UM/UIM coverage than the amount of liability coverage. *Id.* In each of the three consolidated cases, the New Mexico Supreme Court affirmed the Court of Appeals' holding that the defendant insurer had not obtained a valid rejection of UM/UIM coverage from the insured and that the appropriate remedy was reformation of the insurance policy to provide UM/UIM coverage equal to the liability limits. *Id.* ¶¶ 1-2.

Additionally, in *Jordan*, the New Mexico Supreme Court considered whether its holdings should be limited to a prospective application. *Id.* ¶¶ 25-29. The New Mexico Supreme Court follows a presumption that its decisions apply retroactively, which "'can be overcome by an express declaration, in the case announcing the new rule,'" that the new rule will be given a prospective application. *Jordan*, 2010-NMSC-051, ¶ 26 (quoting *Beavers v. Johnson Controls World Servs., Inc.*, 118 N.M. 391, 398, 881 P.2d 1376, 1383 (1994)).[4] In *Jordan*, one of the defendant insurers argued that *Jordan*'s holdings should apply "only to conduct occurring after" *Jordan* was decided, while another defendant insurer argued that *Jordan* should be applied "to the parties before the court . . . and to parties whose conduct occurred" after *Jordan* was decided, "but not to other parties whose conduct occurred before" *Jordan* was decided. *Id.* ¶ 25. The New Mexico Supreme Court concluded as a matter of public policy that its holdings should not "be limited to prospective application only," but instead should be applied "to [automobile insurance] policies . . . that were issued before the date" that *Jordan* was decided. *Id.* ¶ 25. As explained by the New Mexico Supreme Court, although reforming automobile insurance policies already in effect "to provide the statutorily authorized [UM/UIM] coverage will necessarily result in an unplanned cost to insurers who have not secured meaningful rejection and who have not collected appropriate premiums for full coverage," it is "more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law, than to let the burdens fall on non-expert insureds, who are the Legislature's

---

[4]The New Mexico Supreme Court's approach differs from that taken by the United States Supreme Court. When the United States Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and *must be given full retroactive effect* in all *cases still open* on direct review *and as to all events*, regardless of whether such events predate or postdate [the Court's] announcement of the rule." *Harper v. Va. Dep't of Transp.*, 509 U.S. 86, 97 (1993) (emphasis added).

intended beneficiaries." *Id.* ¶ 29.

In response to the letter from Mr. Bleus regarding the Arbelaezes' claim for additional UM/UIM benefits under *Weed Warrior* and *Jordan*, ANPAC filed its Complaint for declaratory judgment, disputing Mr. Arbelaez's ability to bring additional claims arising out of the November 20, 2006, accident following Mr. Arbelaez's execution of the Release in Full and the Thirteenth Judicial District Court's dismissal of Case No. 1329-CV-2008-021128 with prejudice. Mr. Arbelaez answered the Complaint and asserted multiple affirmative defenses.

On June 24, 2011, Mr. Arbelaez filed his Motion for Judgment on the Pleadings under Rule 12(c), arguing that the facts of this matter are undisputed and that Mr. Arbelaez is entitled to judgment as a matter of law. *See* Motion for Judgment on the Pleadings at 3, 5. Relying on the retroactivity language in *Jordan*, Mr. Arbelaez argues that *Jordan* applies to the insurance policies in this case, despite the fact that, unlike the litigants in *Jordan*, Mr. Arbelaez's lawsuit resulted in a settlement and dismissal with prejudice prior to the New Mexico Supreme Court's decision in *Jordan*. *See* Motion for Judgment on the Pleadings at 3-4, 8. Mr. Arbelaez asks the Court to (1) reform Mr. Arbelaez's Release in Full to provide UM/UIM coverage equal to the liability limits in his insurance policies and (2) dismiss ANPAC's Complaint for declaratory judgment. *See* Motion for Judgment on the Pleadings at 11.

## DISCUSSION

**Reformation of the Release in Full under the Mutual Mistake Doctrine**

In his Motion for Judgment on the Pleadings, Mr. Arbelaez argues that the Release in Full should be reformed by the Court under the doctrine of mutual mistake. Mutual mistake is a ground for reforming a written agreement where the writing "'fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing.'" *Twin Forks*

7

*Ranch, Inc. v. Brooks*, 1998-NMCA-129, ¶ 10, 125 N.M. 674, 964 P.2d 838 (quoting 13 Samuel Williston, *A Treatise on the Law of Contracts* § 1548, at 124-25 (3d ed. 1970)). Before a court can reform a contract, the party seeking reformation must prove "clearly and beyond doubt" (1) that the written contract does not express "the agreement intended by the parties," and (2) "the exact and precise form and import that the instrument ought to be made to assume, in order that it may express and effectuate what was really intended by the parties." *Id.*

Mr. Arbelaez contends that the mutual mistake in this case was the parties' reliance on the state of the law—and therefore the amount of UM/UIM coverage available to the parties—at the time the Release in Full was executed. Motion for Judgment on the Pleadings at 9. Further, Mr. Arbelaez argues that "the exact and precise form" that the Release in Full "ought to be made to assume" has been dictated by *Jordan*: the Court should reform the Release in Full to provide UM/UIM benefits equal to the liability limits in the insurance policies. *Id.* at 9, 11.

ANPAC argues that disputed issues of material fact preclude reformation under the mutual mistake doctrine. Response at 1. First, ANPAC explains that it did not rely on pre-*Jordan* and *Weed Warrior* law when it entered into the settlement agreement but instead was fully aware of ANPAC's potential liability to provide UM/UIM benefits equal to the liability limits when ANPAC negotiated a compromise and settled the Arbelaezes' claims. *Id.* at 1-2, 4-5. Second, ANPAC argues that under *Jordan* an insured is only entitled to UM/UIM coverage equal to the liability limits where the insured has shown that the insurer did not comply with the requirements for a valid rejection of UM/UIM coverage under New Mexico law, which Mr. Arbelaez has not shown in this case. *Id.* at 2-3, 5-6. ANPAC makes several other arguments: (1) resolution of the issue of mutual mistake would require a factual determination made after a full evidentiary hearing, *id.* at 5, (2) entitlement to UM/UIM *damages*, as opposed to UM/UIM

*coverage*, is "predicated upon the fault of the uninsured or underinsured driver," which Mr. Arbelaez has not proven in this case, *id.* at 6-7 (citing *Britt v. Phoenix Indem. Ins. Co.*, 120 N.M. 813, 817-18, 907 P.2d 994, 998-99 (1995)); (3) under the terms of his insurance policies, Mr. Arbelaez is required to arbitrate should he seek additional damages, *id.* at 8, and (4) under the terms of the Release in Full, Mr. Arbelaez agreed to indemnify ANPAC for any additional amounts that ANPAC is required to pay as a result of the November 20, 2006, accident, *id.* at 8-9.

      Having considered the parties' arguments, the Court concludes that the equitable remedy of reformation under the contract law doctrine of mutual mistake is not properly before the Court on a Rule 12(c) motion. A Rule 12(c) motion for judgment on the pleadings provides a means for the moving party to demonstrate to the Court that there are no material issues of fact and that the moving party is entitled to judgment on the pleadings as a matter of law. *See Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006). By requesting contract reformation, Mr. Arbelaez seeks a remedy outside the purview of Rule 12(c). In his Motion for Judgment on the Pleadings Mr. Arbelaez appears to be advancing his own contract law claim to relief instead of attacking the sufficiency of the Complaint. Accordingly, the Court will consider only whether Mr. Arbelaez is entitled to judgment on the pleadings, that is, whether ANPAC's Complaint should be dismissed under Rule 12(c).

**ANPAC's Declaratory Judgment Action Should Not Be Dismissed under Rule 12(c) Because ANPAC's Complaint Asserts a Claim for Relief that is Plausible on its Face**

      Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts treat motions for judgment on the pleadings under Rule 12(c) in

generally the same manner as motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009); *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000). In considering a Rule 12(c) motion for judgment on the pleadings, the Court considers the pleadings including attached exhibits and will "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Park Univ. Enters.*, 442 F.3d at 1244. "Judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the [moving] party is entitled to judgment as a matter of law." *Id.* (quotation marks and citation omitted).

Further, like a Rule 12(b)(6) motion, a Rule 12(c) motion should be granted if the complaint fails "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (internal quotation marks, citation, and brackets omitted). At the Rule 12(c) stage of the litigation, the Court will assume that the well-pleaded allegations in the complaint are true and evaluate whether "it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Id.* (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

In this case, the facts pleaded in ANPAC's Complaint and shown in attached exhibits demonstrate that Mr. Arbelaez is situated differently than the insureds in *Jordan* because Mr. Arbelaez's claims against the insurer have resulted in a settlement agreement and the dismissal

of his lawsuit with prejudice. Thus, Mr. Arbelaez's case is final, whereas the three consolidated cases in *Jordan* were still pending on appeal when the insureds' insurance policies were reformed to provide UM/UIM coverage equal to the liability limits. *See Jordan*, 2010-NMSC-051, ¶ 3; *see generally State v. Martinez*, 2011-NMSC-010, ¶ 4, 149 N.M. 370, 249 P.3d 82 ("[U]nder New Mexico law a case is final only when a judgment . . . has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

In addition, to rule on Mr. Arbelaez's Motion for Judgment on the Pleadings, the Court must view the facts presented by ANPAC through the lens of the relevant law, including the retroactive application of the *Jordan* decision. The New Mexico Supreme Court in *Jordan* does not expressly define the term "retroactive." But in researching the contours of *Jordan*'s retroactive application, this Court has found no New Mexico appellate decision that has applied a new rule of law announced in a judicial decision retroactively to reopen cases in which a final judgment has been entered and the time to appeal has expired. *See, e.g.*, *State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 49, 135 N.M. 375, 89 P.3d 47 ("Retroactive application of a ruling in a civil case means that the new rule of law *applies to all cases not finally determined*, including the case in which the new rule is adopted, regardless of whether the events in question occurred after or before the ruling is announced." (emphasis added)); *Stein v. Alpine Sports, Inc.*, 1998-NMSC-040, ¶ 7, 126 N.M. 258, 968 P.2d 769 (" If a decision does not mention otherwise, the newly fashioned rule is presumed to apply retroactively to *all pending cases and appeals*." (emphasis added)); *Beavers*, 118 N.M. at 397 n.7, 881 P.2d at 1382 n.7 ("Retroactivity . . . occurs when a decision applies not only to acts occurring after announcement of the decision and to the litigants before the court, but also to *acts* occurring before the

announcement." (emphasis added)); *Whenry v. Whenry*, 98 N.M. 737, 741, 652 P.2d 1188, 1192 (1982) (concluding that the United State Supreme Court's decision in *McCarty v. McCarty*, 453 U.S. 210 (1981), did not "invalidate[,] or otherwise render unenforceable, prior valid and subsisting state court judgments" and limiting the application of *McCarty* "to New Mexico cases which, when *McCarty* was decided, were pending in the district court and in which no final judgment had been entered, cases in which a final judgment had been entered but the time for appeal had not expired, cases on appeal, and cases which are filed in the future"); *Scott v. Rizzo*, 96 N.M. 682, 690, 634 P.2d 1234, 1242 (1981) ("[W]e hold that the rule herein adopted be applicable to the instant case and all cases filed hereafter. Further, in those appropriate cases in which trial commences after the date on which this opinion becomes final, including those which may be remanded for retrial for whatever reason, comparative negligence shall be applicable. And, finally, the new rule shall be applicable to any case presently pending in the appellate courts in which the issue is preserved."), *overruled on other grounds as recognized in Tafoya v. Rael*, 2008-NMSC-057, ¶ 22, 145 N.M. 4, 193 P.3d 551; *cf. Harper*, 509 U.S. at 97 ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given *full retroactive effect in all cases still open on direct review and as to all events*, regardless of whether such events predate or postdate our announcement of the rule."(emphasis added)).

Moreover, the Court appreciates the policy reasons for refusing to reopen final judgments, such as promoting finality in civil suits, encouraging reliance on adjudication, and conserving judicial resources.[5] *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398

---

[5]Further, the Court questions whether a federal district court has jurisdiction to set aside the state court's dismissal with prejudice of Mr. Arbelaez's claims.

(1981) ("[T]he res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."); *Phelps Dodge Corp. v. Guerra*, 92 N.M. 47, 50, 582 P.2d 819, 822 (1978) ("Judgments of a district court are presumptively correct. It is horn-book law that a final judgment should not be lightly disturbed." (internal citations omitted)); *Hennessy v. Duryea*, 1998-NMCA-036, ¶ 12, 124 N.M. 754, 955 P.2d 683 ("[F]inal judgments can be reopened only in very limited circumstances, *see* Rule 1-060, NMRA[.]"); *Koppenhaver v. Koppenhaver*, 101 N.M. 105, 108, 678 P.2d 1180, 1183 (Ct. App. 1984) (explaining that Rule 1-060(b)(6) NMRA provides "a reservoir of equitable power" and gives a trial court discretion to modify final judgments the trial court has entered).

Accepting the well-pleaded allegations in ANPAC's Complaint as true and viewing those facts in light of the relevant law, the Court concludes that Mr. Arbelaez has not met his burden under Rule 12(c) of demonstrating that he is entitled to judgment as a matter of law. ANPAC's Complaint for declaratory judgment states a plausible claim to relief. Accordingly, Mr. Arbelaez's Rule 12(c) Motion for Judgment on the Pleadings will be denied.

**IT IS ORDERED THAT** Defendant Omar Arbelaez's Rule 12(c) Motion for Judgment on Pleadings (Doc. No. 6) is denied.

_____
SENIOR UNITED STATES DISTRICT COURT JUDGE