**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY,
a foreign corporation,

    **Plaintiff,**

vs.                                                                                           No. 11-cv-443 JP/GBW

**OMAR ARBELAEZ,** Individually
and as Personal Representative of
**the Estate of NORA ARBELAEZ**, deceased,

    **Defendants.**

**CONSOLIDATED WITH**

**OMAR ARBELAEZ,** Individually and as
Personal Representative of **the Estate of**
**NORA ARBELAEZ,** deceased;
**VENNESSA ARBELAEZ,** Individually and
As Personal Representative of **the Estate of**
**JENNESSA SINGLETON,** deceased, and
as Parent and Next Best Friend of **JEREMIAH**
**SINGLETON,** a minor,

    **Plaintiffs,**

v.                                                                              No. 11-cv-612 JP/GBW

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY,
a foreign corporation,

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Omar Arbelaez and Vennessa Arbelaez ("the Arbelaez Parties") move the Court under

Federal Rule of Civil Procedure 60 for relief from or to set aside the Court's previous orders

granting summary judgment to American National Property and Casualty Co. ("ANPAC"). On

August 27, 2012, the Arbelaez Parties filed a MOTION TO SET ASIDE JUDGMENT (Doc. No. 84) ("Motion to Set Aside Judgment"), asking the Court to set aside (1) the Court's March 19, 2012 MEMORANDUM OPINION AND ORDER (Doc. No. 55) ("March Order") granting summary judgment to ANPAC against Omar Arbelaez, the Defendant named in ANPAC's COMPLAINT FOR DECLARATORY JUDGMENT (Doc. No. 1) ("Complaint for Declaratory Judgment"); (2) the Court's July 27, 2012 MEMORANDUM OPINION AND ORDER (Doc. No. 81) ("July Order") granting summary judgment to ANPAC against the Arbelaez Parties in Case No. CIV 11-612 JP/GBW; and (3) the Court's SUMMARY JUDGMENT Order (Doc. No. 82) ("Summary Judgment Order"), filed July 27, 2012, granting summary judgment to ANPAC on its Counterclaim for Declaratory Judgment against the Arbelaez Parties in Case No. CIV 11-612 JP/GBW (collectively, "the Orders"). The Court concludes that the Arbelaez Parties have not demonstrated adequate reason under Rule 60 for the Court to set aside the Orders, and that the Motion to Set Aside Judgment should therefore be denied.

## BACKGROUND[1]

This MEMORANDUM OPINION AND ORDER provides only a brief recitation of the facts relevant to the Arbelaez Parties' Motion to Set Aside Judgment. For a more comprehensive description of the factual background in these consolidated cases, see the Court's March Order.

These cases stem from a tragic single-car accident that occurred on November 20, 2006. In the accident, Jeremy Singleton and Jennessa Singleton died, and Vennessa Arbelaez, Jeremiah Singleton, and Nora Arbelaez were injured. Nora Arbelaez's severe injuries ultimately led to her death on June 8, 2008. Omar Arbelaez, who owned the car, insured it through ANPAC.

---

[1]This Background is drawn from the Background provided in the July Order. *See* Doc. No. 81 at 2-6.

The Arbelaez Parties filed a lawsuit for wrongful death and personal injury insurance policy benefits against ANPAC in the Thirteenth Judicial District Court, County of Sandoval, State of New Mexico, captioned as Case No. D-1329-CV-2008-02128. The Arbelaez Parties and ANPAC, through legal counsel, subsequently negotiated a settlement. On November 25, 2008, Omar Arbelaez and Vennessa Arbelaez each executed a settlement agreement releasing ANPAC from all claims arising from the 2006 accident, in exchange for ANPAC's payment of specified insurance benefits. *See* RELEASE IN FULL AND INDEMNITY AGREEMENT (Doc. No. 1-1); RELEASE IN FULL AND INDEMNIFICATION AGREEMENT (Doc. No. 1-2) (collectively, "the Releases"). On the same day, the Thirteenth Judicial District Court entered an order that approved the settlement and dismissed Case No. D-1329-CV-2008-02128 with prejudice. *See* ORDER OF DISMISSAL (Doc. No. 1-3).

On April 18, 2011, despite the Releases and the Thirteenth Judicial District's dismissal with prejudice of the Arbelaez Parties' lawsuit more than two years earlier, the Arbelaez Parties' attorney told ANPAC of his clients' intent to claim additional insurance benefits related to the 2006 accident. *See* Doc. No. 1-5. The Arbelaez Parties believed that their insurance coverage may have been reformed by two recent New Mexico Supreme Court opinions regarding uninsured/underinsured ("UM/UIM") motorist coverage policies, *Progressive Northwestern Insurance Co. v. Weed Warrior Services*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209, and *Jordan v. Allstate Insurance Co.*, 2010-NMSC-051, 149 N.M. 162, 245 P.3d 1214.

On May 23, 2011, ANPAC filed its Complaint for Declaratory Judgment in Case No. CIV 11-443 JP/GBW against Omar Arbelaez, individually and as personal representative of the Estate of Nora Arbelaez, seeking a judgment that would preclude Omar Arbelaez from asserting new claims against ANPAC arising from the 2006 accident. On June 20, 2011, Omar Arbelaez

3

and Vennessa Arbelaez filed a new suit in the First Judicial District Court, County of Santa Fe, State of New Mexico, against ANPAC ("the Arbelaez Complaint"). Each of the nine counts in the Arbelaez Complaint was based on ANPAC's failure to reform Omar Arbelaez's insurance policy after the New Mexico Supreme Court's new UM/UIM decisions. On July 11, 2011, ANPAC removed the Arbelaez Complaint to this Court, where the case was captioned as Case No. CIV 11-612 JP/GBW and consolidated with ANPAC's earlier Complaint for Declaratory Judgment, Case No. CIV 11-443 JP/GBW. *See* ORDER OF CONSOLIDATION (Doc. No. 19).

On November 18, 2011, ANPAC moved for summary judgment in Case No. CIV 11-443 JP/GBW. *See* Doc. No. 35. The Court's March Order granted ANPAC's motion with regard to Omar Arbelaez, individually and as personal representative of the Estate of Nora Arbelaez; the other Arbelaez Parties were not named in ANPAC's Complaint for Declaratory Judgment. *See* March Order at 15. The Court reasoned that retroactive application of the New Mexico Supreme Court's recent UM/UIM decisions would not operate to reopen the parties' final settlements or the final state court judgment in Case No. D-1329-CV-2008-02128. *See id.* at 13. *See id.* at 14-15. ANPAC subsequently moved for, and the Court's July Order and Summary Judgment Order granted, summary judgment against all the Arbelaez Parties on both the Arbelaez Complaint and on ANPAC's Counterclaim for Declaratory Judgment in Case No. CIV 11-612 JP/GBW. *See* July Order at 2; Summary Judgment Order at 2. The Court issued its July Order and Summary Judgment Order based on the same reasoning as that in the March Order. *See id.*

After the Court's March Order, the Arbelaez Parties returned to the Thirteenth Judicial District, where they asked The Honorable Judge George P. Eichwald, who oversaw the original settlement and resulting dismissal with prejudice of the Arbelaez Parties' 2008 lawsuit against ANPAC, to reopen the settlement based on the New Mexico Supreme Court's recent UM/UIM

decisions. At an August 10, 2012 hearing, Judge Eichwald indicated that he might have reopened the settlement, but that he considered himself collaterally estopped from doing so by this Court's Orders granting summary judgment to ANPAC. *See* Doc. No. 86-1. The Arbelaez Parties then moved this Court for relief from the Orders under Federal Rule of Civil Procedure 60.

## DISCUSSION

In their Motion to Set Aside Judgment, the Arbelaez Parties argue that this Court's Orders have created friction between the state and federal courts, so that this Court should now determine that it lacks jurisdiction under the Declaratory Judgment Act. *See* Motion to Set Aside Judgment at 5. ANPAC responds that the Arbelaez Parties are just "seek[ing] yet another bite at the same legal apple by pitting this Court against the Thirteenth Judicial District Court for the State of New Mexico," and that the Arbelaez Parties should be allowed no other recourse than to appeal this Court's Orders. *See* RESPONSE IN OPPOSITION TO THE ARBELAEZ PARTIES' MOTION TO SET ASIDE SUMMARY JUDGMENT AND MEMORANDUM AND ORDER OR FOR RELIEF FROM ORDERS (Doc. No. 85) ("Response") at 2-3. The Arbelaez Parties' REPLY IN SUPPORT OF THE MOTION TO SET ASIDE SUMMARY JUDGMENT (Doc. No. 86) ("Reply") asserts that exceptional circumstances present in this case—namely, Judge Eichwald's indication that, but for this Court's Orders, he would be willing to reopen the parties' settlement—support a conclusion that this Court should now retract its prior Orders and decline jurisdiction because of "Federalism concerns." Reply at 3.

**A. Rules Governing Retention of Jurisdiction Under the Declaratory Judgment Act**

The Arbelaez Parties challenge the propriety of this Court's retention of jurisdiction over the consolidated cases, arguing that a conflict has arisen between state and federal courts. As the Arbelaez Parties note, federal courts are not required to exercise jurisdiction over declaratory

judgment actions, even when other jurisdictional requirements are met. *See* Motion to Set Aside Judgment at 5 (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942); *see also Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (explaining that "[t]he Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."). In this spirit, the Tenth Circuit has adopted five factors for district courts to use in exercising that discretion:

> (1) whether a declaratory action in federal court would settle the controversy;
> (2) whether federal court jurisdiction would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"
> (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*State Farm Fire and Casualty Co. v. Mhoon,* 31 F.3d 979, 983 (1994) (quoting factors used by the Sixth Circuit in *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (1987)). In *Mhoon*, the court considered whether a central question of law in the case had been "before both the state and federal courts simultaneously[, so that] the federal court's failure to await the state court's resolution of the issue opened the possibility that the state court would be foreclosed from deciding" the question on its own terms. 31 F.3d at 983. The *Mhoon* court upheld the district court's retention of jurisdiction because "a live need for declaration of [a party's] rights and duties did, in fact, exist." *Id.* at 983-84. Thus, while a "federal district court is not required to refuse jurisdiction, it 'should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) (quoting *Kunkel v. Continental Cas. Co.,* 866 F.2d 1269, 1276 (10th Cir. 1989)). This rule applies particularly when the pending proceeding is in state court. *See Mid-Continent Cas. Co. v.*

*Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 986 (10th Cir. 2012) (agreeing with district court's concerns about retaining jurisdiction in a case with parallel state proceedings); *United States v. City of Las Cruces*, 289 F.3d 1170, 1190-91 (10th Cir. 2002) (approving district court's denial of jurisdiction due to "danger of grave interference with the state proceedings").

**B. Legal Standards Governing a Motion to Set Aside Judgment Under Rule 60(b)**

The Arbelaez Parties believe that "Rule 60(b)(5) and (6) provide the strongest basis for this Court to set aside its prior Orders." Motion to Set Aside Judgment at 5. These sections of Rule 60(b) instruct that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> . . .
>     (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>     (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b). Rule 60 generally recognizes a district court's power to "entertain an independent action to relieve a party from a judgment, order, or proceeding," but courts should use the rule's provisions sparingly for more extreme cases. FED. R. CIV. P. 60(d); *see Sindar v. Garden*, 284 F. App'x 591, 596 (10th Cir. 2008) (unpublished decision). Parties moving under Rule 60(b) must overcome a higher hurdle in arguing for reconsideration of an issue than they would on appeal, "because a Rule 60(b) motion is not a substitute for an appeal." *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.*, 909 F.2d 1437, 1440 (10th Cir. 1990) (citing *Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601, 607 (7th Cir. 1986).

### 1. Rule 60(b)(5): Changed Circumstances

Subsection (5) of Rule 60(b) applies in several contexts. The first situation is when a judgment has been satisfied, released, or discharged; it does not apply here. The second is when a

judgment upon which the present judgment was based has been reversed or vacated. This ground applies only when the two judgments are related in terms of issue or claim preclusion, not when a case that was merely relied on as precedent was later reversed. *See* 11 C. Wright et al., Fed. Prac. & Proc. Civ. § 2863 (2d ed.) (citing cases). Finally, Rule 60(b)(5) relief may be available if a judgment's prospective application ceases to be equitable. This ground has been the most significant, historically, especially for modifying injunctions or consent decrees. *See Horne v. Flores*, 557 U.S. 433, 447 (2009) ("Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but . . . provides a means by which a party can ask a court to modify or vacate a judgment or order in case a significant change to factual conditions or law makes continued enforcement [of an injunction] 'detrimental to the public interest'") (quoting *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 384 (1992)). Though Rule 60(b)(5) relief is usually sought for injunctions, it may apply to any judgment with prospective effect; by the same token, when a court's judgment presently addresses a past wrong, relief under the rule is not available. *See Dowell by Dowell v. Bd. of Educ. of Okla. City Pub. Sch., Indep. Dist. No. 89, Okla. City, Okla.*, 8 F.3d 1501, 1509 (10th Cir. 1993) (district court decision terminating decree requiring board of education to adopt and implement comprehensive desegregation plan did not have prospective effect, so Rule 60(b)(5) relief was unavailable).

### 2. Rule 60(b)(6): Interests of Justice

Subsection (6) of Rule 60(b) provides courts with a "grand reservoir of equitable power to do justice in a particular case." *Van Skiver v. United States*, 952 F.2d 1241, 1244 (10th Cir. 1991) *cert. denied*, 506 U.S. 828 (1992) (quotation marks omitted). But district courts generally may only grant relief under this provision in extraordinary circumstances. *See Sindar v. Garden*, 284 F. App'x at 596. Rule 60(b)(6) "seek[s] to strike a delicate balance between countervailing

impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983) (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) (emphasis added in the original)). Rule 60(b)(6) gives courts a broad equitable power, but that power must be exercised according to a stringent standard: whether relief is warranted given the "extraordinary circumstances." *Servants of the Paraclete v. Doe*s, 204 F.3d 1005, 1009 (10th Cir. 2000). In other words, courts should only provide relief under the rule "when it offends justice to deny such relief." *Cashner v. Freedom Stores, Inc.,* 98 F.3d 572, 580 (10th Cir. 1996). Because Rule 60(b)'s first five subsections cover most cases, and this "catch-all" category is mutually exclusive with the others, movants seeking relief under Rule 60(b)(6) must demonstrate truly unusual circumstances before relief will be justified. *See Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1293 (10th Cir. 2005).

"Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'" C. Wright et al., *supra*, § 2864. The Tenth Circuit has noted its willingness to grant such relief on occasions "when, after entry of judgment, events not contemplated by the moving party render enforcement of the judgment inequitable." *Cashner*, 98 F.3d at 579 (citing *Zimmerman v. Quinn,* 744 F.2d 81, 82-83 (10th Cir. 1984) (upholding modification of judgment under Rule 60(b)(6) to allow one-year suspension of receiving party's tax liability on transferred amount when both parties expected fund transfer to occur within sixty days, but it took almost eighteen months); *State Bank v. Gledhill (In re Gledhill),* 76 F.3d 1070, 1081 (10th Cir. 1996) (because "the circumstances of the case had changed significantly since" judgment, Rule 60(b)(6) relief was appropriate). Another situation that the Tenth Circuit, unlike its sister Circuits, sometimes holds to demonstrate "extraordinary circumstances," is when there has been a change

9

in the state law on which the challenged decision was based. *See Pierce v. Cook & Co*. 518 F.2d 720 (10th Cir. 1975), *cert. denied*, 423 U.S. 1079 (1976) (state precedent relied on by federal court decision was overturned in state case arising out of same facts, so petitioners in federal case merited 60(b)(6) relief). However, though this Circuit recognizes the potential for relief in such a scenario, "[a]bsent a post-judgment change in the law in a *factually-related case* . . . 'a change in the law or in the judicial view of an established rule of law' does not justify relief under Rule 60(b)(6)." *Johnston v. Cigna Corp.*, 14 F.3d 486, 497 (10th Cir. 1993) (quoting *Van Skiver,* 952 F.2d at 1245 (emphasis added)); *see also Colo. Interstate Gas Co. v. Natural Gas Pipeline Co. of Am.*, 962 F.2d 1528, 1535 (10th Cir. 1992) (reiterating this view of the rule).

**C. This Court Appropriately Retained and Continues to Exercise Jurisdiction Over the Case**

Application of the *Mhoon* factors indicates that this Court's continued retention of jurisdiction over the case is appropriate.[2] In particular, other cases in which district courts have declined jurisdiction over declaratory judgment actions for the kinds of "Federalism concerns" cited by the Arbelaez Parties are distinguishable, because despite the Arbelaez Parties' efforts, there is no pending state court proceeding with which this Court's decision can interfere.

**1. Retaining Jurisdiction Has Not Created Friction Between State and Federal Courts**

The Arbelaez Parties focus their argument on the fourth *Mhoon* factor's concerns, though without citing *Mhoon* or cases following it. This factor asks "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Mhoon*, 31 F.3d at 983. The Arbelaez Parties assert that because "Judge Eichwald

---

[2]The Court notes that although the Arbelaez Parties cite *Brillhart* for its indication that district courts need not retain jurisdiction over declaratory judgment actions, they provide no mention of or argument under the *Mhoon* factors, which control the analysis in this Circuit; ANPAC also makes no argument under the factors. Therefore, the Court will engage in the analysis of the factors unaided by the parties, using its sound discretion.

10

has decided that this Court's decision collaterally estops him from setting aside his prior Order . . . [t]his Court's Order raises significant Federalism concerns." Motion to Set Aside Judgment at 5. However, as ANPAC correctly points out, the only reason Judge Eichwald had occasion to consider whether he might set aside the parties' settlement was because the Arbelaez Parties "attempted to reopen the long-dismissed lawsuit in the state court upon being denied relief by this Court." Response at 5. This kind of contrived (and theoretical) conflict between state and federal courts is not likely the sort of "friction" contemplated by the *Mhoon* court.

Importantly, in contrast with the situation in *Mhoon* and every other case applying its five factors, there were and are no "pending proceeding[s]" in which "the same fact-dependent issues are likely to be decided." *Runyon*, 53 F.3d at 1170. The original state proceeding concluded over four years ago; ANPAC immediately, and properly, removed the Arbelaez Parties' more recent state proceeding to federal court. The Arbelaez Parties only returned to state court after this Court's Orders holding that the New Mexico Supreme Court's UM/UIM decisions did not apply to the Arbelaez Parties' settlement with ANPAC. The Arbelaez Parties' assertion that "ANPAC used this Court to block the State District Court from re-opening or setting aside its state court judgment" is belied by this timeline. Motion to Set Aside Judgment at 6. The Arbelaez Parties' unsuccessful attempt to reopen the settlement in state court does not count as a "pending proceeding." Therefore, it is clear that this Court's retention of jurisdiction over the case will not create friction between the state and federal court systems. The state court system disposed of any interest in the matter that could create friction in 2008, when Judge Eichwald approved the parties' settlement and dismissed the Arbelaez Parties' suit against ANPAC with prejudice.

### 2. The Other *Mhoon* Factors Favor Continued Retention of Jurisdiction Over the Case By This Court

*Mhoon*'s four other factors similarly weigh in favor of this Court's jurisdiction over the

matter. First, the Arbelaez Parties' attempt to return to state court aside, this Court's grant of declaratory judgment to ANPAC settled the controversy, though the Arbelaez Parties may of course appeal. Similarly, the Court's Orders clarified the parties' legal relations by holding that ANPAC has no further responsibility to the Arbelaez Parties with regard to the insurance claims that were settled in 2008. By contrast, if the Court were to grant the Arbelaez Parties' Motion to Set Aside Judgment (or had declined jurisdiction in the first place), such a decision would throw the parties' legal relations into great uncertainty. And though the Arbelaez Parties complain that "ANPAC used this Court to block the State District Court from re-opening or setting aside its state court judgment," ANPAC's filings in this Court were proper; there is no indication that ANPAC has engaged in the "procedural fencing" or "race to res judicata" disfavored by *Mhoon*. Motion to Set Aside Judgment at 6; *Mhoon*, 31 F.3d at 983. Indeed, if anyone is engaging in procedural fencing, it is the Arbelaez Parties, with their repeated attempts to reopen a case that was completely settled years ago. Furthermore, there can be no real "race to res judicata" when res judicata attached to the parties' dispute upon dismissal of the state court case four years ago.

Finally, the only alternative remedy to this Court's continued retention of jurisdiction over ANPAC's declaratory judgment action would be to grant the Arbelaez Parties' Motion to Set Aside Judgment, allowing them to return to state court, where the proceedings would surely set off yet another wave of litigation in both state and federal courts. This outcome can hardly be called "better or more effective." *Mhoon*, 31 F.3d at 983. The Arbelaez Parties are not without relief; as noted, they may proceed with an appeal. That "alternative remedy" seems to this Court to be the most appropriate and effective one available.

**D. The Arbelaez Parties Are Not Entitled to Relief Under Rule 60(b)**

Because the Court continues to retain jurisdiction over this case, consideration of whether

the Arbelaez Parties merit relief under Rule 60(b) is proper. However, the Arbelaez Parties' filings do not demonstrate anything like the requisite changed or extraordinary circumstances.

### 1. No "Changed Circumstances" Exist to Merit Rule 60(b)(5) Relief

The Arbelaez Parties explain that they are not invoking Rule 60(b)(5) "to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order when a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." Motion to Set Aside Judgment at 5. The Arbelaez Parties' Reply indicates that they believe "[t]here has been precisely this change in circumstance" that Rule 60(b)(5) requires. Reply at 2 (citing *Horne v. Flores*, 557 U.S. at 447-57). Namely, the Arbelaez Parties argue Judge Eichwald's recent indication that, but for this Court's Orders, he might have set aside the 2008 settlement creates "a significant change in circumstance." Reply at 3.

This argument runs into two problems. First, the Court does not believe that Judge Eichwald's statement constitutes a "significant change" in the relevant facts or law; it was a statement of opinion (that he would have considered reopening the settlement) and of fact (that he could not reopen the settlement because of this Court's Orders), but it had no effect on this case except to raise the Arbelaez Parties' hopes of Rule 60(b) relief. Second, and more importantly, while the Court's Orders will, in a sense, have a future effect on the parties, the Orders do not have prospective application in the sense contemplated by Rule 60(b)(5). Rather, the Orders addressed the parties' past and present rights and liabilities and determined that ANPAC has no further obligation to the Arbelaez Parties with regard to the insurance claims that were settled in 2008. Rule 60(b)(5) relief is available only for judgments with future application, such as injunctions. The Court's Orders granting summary judgment to ANPAC on ANPAC's Complaint

for Declaratory Judgment and on the Arbelaez Complaint have no prospective application. The Orders merely confirm that the settlement reached between ANPAC and the Arbelaez Parties more than four years ago was final, and that the New Mexico Supreme Court's recent decisions, despite their retroactive effect, did not reopen or reform them.

### 2. The Arbelaez Parties Have Not Demonstrated "Extraordinary Circumstances" to Merit Rule 60(b)(6) Relief

The Arbelaez Parties assert that "the State Court believes exceptional circumstances exist in this matter and that there is good reason to set aside the prior judgment." Reply at 3. The Arbelaez Parties also claim "that the public policy issues supporting the ruling in [the New Mexico Supreme Court's recent UM/UIM cases], as well as [ANPAC's] breach of 'affirmative duty to disclose insurance coverage to [the Arbelaez Parties] . . . have created exceptional circumstance [sic] in this matter." Reply at 3-4. The Court cannot agree that any "exceptional circumstances" exist. There has been no change in state law in a factually related case, nor any "events not contemplated by the moving party [that] render enforcement of the judgment inequitable." *Cashner v. Freedom Stores, Inc.,* 98 F.3d 572, 579 (10th Cir. 1996). The only event mentioned by the Arbelaez Parties is the hearing with Judge Eichwald, but not only did the Arbelaez Parties both contemplate and precipitate that event, it changed nothing. Judge Eichwald did not reopen the settlement, and his statement that he might have done so, but for this Court's Orders, does not amount to an "extraordinary circumstance" meriting Rule 60(b)(6) relief.

The Arbelaez Parties and ANPAC settled in 2008; like many rational litigants, they determined that the costs of litigation would probably outweigh the benefits. As noted by the United States Supreme Court in the case of a petitioner seeking Rule 60(b)(6) relief to allow him to appeal after he chose not to appeal within the appropriate time limits, the choice had been "a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved

of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong . . . . There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198 (1950); *see also Cashner,* 98 F.3d at 580 (quoting *Ackermann* and finding "nothing sufficiently 'unusual or compelling' about making a bad bargain to warrant relief under Rule 60(b)(6)").

The New Mexico Supreme Court sufficiently addressed the "public policy" issues noted by the Arbelaez Parties in the *Jordan* case by giving the decision retroactive effect, which under New Mexico case law means application to "all cases not *finally determined*," including those pending in litigation and on appeal. *State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 49, 135 N.M. 375, 89 P.3d 47 (emphasis added). Furthermore, as this Court noted in its March Order, "numerous public policy considerations counsel against the reopening of cases that have been finally determined." March Order at 13. Both New Mexico courts and the federal judicial system place great value on finality, as the Court has explained, so although the New Mexico Supreme Court's UM/UIM decisions have retroactive effect, they would not operate to reform a final settlement entered into two years before those decisions. *See id.* at 13-14. A final settlement is just that; subsequent changes in the law may cause parties to regret having entered into a settlement, but regret is not an adequate basis for relief under Rule 60(b)(6). Accordingly, the Arbelaez Parties' Motion to Set Aside Judgment will be denied.

**IT IS ORDERED THAT** THE ARBELAEZ PARTIES' MOTION TO SET ASIDE JUDGMENT [Doc. No. 84] IS DENIED.

                                                                                          *James A. Parker*
                                                             _____
                                                             SENIOR UNITED STATES DISTRICT JUDGE